IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MAIDEN BIOSCIENCES, INC., § § Plaintiff, § § VS. § § DOCUMENT SECURITY § SYSTEMS, INC., et al., § § Defendants. § | Civil Action No. 3:21-CV-0327-D |

MEMORANDUM OPINION
AND ORDER

This is a collection action brought by plaintiff Maiden Biosciences, Inc. ("Maiden") against eight defendants seeking to recover the judgment Maiden obtained in *Maiden Biosciences, Inc. v. MPM Medical, Inc.,* No. 3:18-CV-1354-D (N.D. Tex. filed Oct. 16, 2017) (Fitzwater, J.) (the "*Maiden-MPM* Suit").[1]  Maiden asserts claims for fraudulent conveyance, under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (West 2021), unjust enrichment, declaratory judgment,[2] and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, against defendants RBC Life Sciences, Inc. ("RBC Sciences") and Steven E. Brown ("Brown") (collectively, the "RBC Defendants"), Document Security Systems, Inc. ("DSS"),

---

[1] The *Maiden-MPM* Suit was filed in the District of Maryland on October 16, 2017 and transferred to this court on May 29, 2018.

[2] Maiden asserts in count III a declaratory judgment claim against DSS and HWH, but neither defendant moves to dismiss this claim. Accordingly, Maiden's declaratory judgment claim is not the subject of this memorandum opinion and order.

Decentralized Sharing Systems, Inc. ("Decentralized"), HWH World Inc. f/k/a Bliss International Inc. ("HWH"), RBC Life International, Inc. ("RBC International"), and Frank D. Heuszel ("Heuszel") (collectively, the "DSS Defendants"), and Andrew Howard ("Howard").[3] Defendants move to dismiss certain claims against them under Fed. R. Civ. P. 9(b) and 12(b)(6). For the reasons that follow, the court grants in part and denies in part the motion of DSS, Decentralized, HWH, RBC International, and Heuszel, grants the motion of RBC Sciences and Brown, and grants Howard's motion. The court also grants Maiden leave to file a first amended complaint within 28 days of the date this memorandum opinion and order is filed.

I

In 2017 Maiden brought the *Maiden-MPM* Suit against MPM Medical Inc., n/k/a Crown Medical Products, Inc. ("Crown") and RBC Sciences (collectively, the "Judgment Debtors"), seeking to recover on claims for breach of contract and unjust enrichment.

In October 2019 RBC Sciences entered into a secured convertible note with Decentralized (the "First Note"). The First Note was secured by a security agreement and a guaranty made by RBC Life Sciences USA, Inc. ("RBC USA"), a wholly owned subsidiary of RBC Sciences. The security agreement granted Decentralized a security interest in all of the assets and personal property of RBC Sciences and RBC USA, including intellectual

---

[3]Katherine M. Howard, as executor of the estate of Clinton Howard, joined in Howard's motion. Maiden has since voluntarily dismissed its claims against Clinton Howard, so his motion is deemed moot.

- 2 -

property, now or hereafter existing. Decentralized filed an amended UCC financing statement in October 2019.

In November 2019 RBC Sciences entered into a secured revolving convertible note with HWH (the "Second Note"). The Second Note was secured by a security agreement and a guaranty made by certain RBC subsidiaries (the "RBC Subsidiaries"). Like the first security agreement, the second security agreement granted HWH a security interest in all of the assets and personal property RBC Sciences and the RBC Subsidiaries, including intellectual property, now or hereafter existing. HWH filed a UCC financing statement in November 2019.

In December 2019 the Judgment Debtors filed in the *Maiden-MPM* Suit an unopposed motion to withdraw their answers and counterclaim and to permit their counsel to withdraw. This court granted the motion on the same day.

In January 2020 Decentralized notified RBC USA that it was in default on its obligations as guarantor of the First Note. Decentralized proposed to grant RBC USA a credit against the First Note in exchange for collateral. RBC USA accepted Decentralized's proposal, and Decentralized maintains that it rightfully owns all of RBC USA's assets.

In February 2020 HWH notified RBC Sciences and the RBC Subsidiaries that they were in default on their obligations under the Second Note. HWH proposed to grant RBC Sciences and the RBC Subsidiaries a credit against the Second Note in exchange for collateral. RBC Sciences and the RBC Subsidiaries accepted HWH's proposal, but Blue Elephant Financing LLC, then a secured creditor of RBC Sciences, objected to this

- 3 -

acceptance of collateral, so HWH conducted a public foreclosure sale. HWH contends that it acquired essentially all of RBC Sciences' assets in exchange for providing RBC Sciences a credit against the Second Note at the foreclosure sale.

On March 2, 2020 this court entered in the *Maiden-MPM* Suit a final default judgment against the Judgment Debtors. Maiden then commenced efforts to collect the judgment. In June and September 2020, the court granted Maiden's first and second applications to turnover certain assets of RBC Sciences. In March 2021 the court denied Maiden's third application to turnover RBC Sciences' assets after Decentralized and HWH intervened. The court held that it lacked the authority on a turnover motion to decide whether the claims of Decentralized and HWH to ownership of the assets were invalid. *See Maiden Biosciences, Inc. v. MPM Med. Inc.*, 2021 WL 1056458, at *1 (N.D. Tex. Mar. 18, 2021) (Fitzwater, J.).

On February 15, 2021 Maiden brought the instant lawsuit alleging claims for fraudulent transfer under TUFTA, unjust enrichment, declaratory judgment, and under RICO. Maiden alleges that defendants perpetrated a fraudulent scheme to profit from RBC Sciences' assets and cheat RBC Sciences' creditors by which DSS paid nothing to take control of at least $7.5 million of RBC Sciences' assets, and defendants executed promissory notes, stock sales, and foreclosure sales to legitimize the transfer of assets from RBC Sciences to DSS and its subsidiaries. In three motions, defendants move to dismiss. Maiden opposes the motions.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Inc.*, 855 F.Supp.2d 615, 618 (N.D. Tex.2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive defendants' motions to dismiss under Rule 12(b)(6), Maiden must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v.*

- 5 -

*AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013). "[Rule] 9(b) applies to . . . RICO claims resting on allegations of fraud." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)); *see also Tel-Phonic Servs.*, 975 F.2d at 1138 ("[Rule 9(b)] applies to the pleading of fraud as a predicate act in a RICO claim[.]"). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Turner*, 2011 WL 3606688, at *2 (quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted). More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief," "punctilious pleading detail" is not required. *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (quoting *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990)) (internal quotation marks omitted). "The court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar & Miller,*

- 6 -

*P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.) (citation omitted).

III

The court first turns to Maiden's civil RICO claim.

A

Maiden alleges that DSS, RBC International, Decentralized, HWH, Heuszel, Brown, and Howard formed an enterprise to assume control of RBC Sciences and misappropriate its assets to establish RBC International and support DSS, HWH, and Decentralized at the expense of RBC Sciences' creditors, including Maiden; the enterprise engaged in a pattern of racketeering activity in the form of mail fraud, wire fraud, and bank fraud; and the intended purpose of the scheme was to misappropriate RBC Sciences' assets from RBC Sciences' creditors.  Maiden asserts that, starting in September 2019, the enterprise committed predicate acts in the form of wire transfers among DSS, RBC International, RBC USA, and HWH, and the transmission of the First Note, the Second Note, and the related security agreements, various UCC-1 statements and Securities and Exchange Commission ("SEC") filings, and various other agreements among the parties by which HWH and Decentralized acquired RBC Sciences' assets.

B

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"  18 U.S.C. § 1962(c).  "'Reduced to their

- 7 -

simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Orthoflex, Inc. v. ThermoTek, Inc*., 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.) (quoting *Larrew v. Barnes*, 2002 WL 32130462, at *1 n.1 (N.D. Tex. Aug. 27, 2002) (Kaplan, J.), *rec. adopted*, 2002 WL 32130462 (N.D. Tex. Sept. 17, 2002) (Fitzwater, J.)), *aff'd sub nom. Motion Med. Techs., L.L.C. v. ThermoTek, Inc.*, 875 F.3d 765 (5th Cir. 2017).

As this court has explained:

> "Section 1961(1)(B) defines 'racketeering activity' according to whether it constitutes 'any act which is indictable' under several specified sections of title 18 of the United States Code, [two] of which [are] mail fraud [and wire fraud]." *TruGreen Landcare, LLC v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). "To establish a pattern of racketeering activity, [plaintiffs] must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts." *Orthoflex*, 2012 WL 2864510, at * 2 (citing *In re Burzynski,* 989 F.2d 733, 742 (5th Cir. 1993)). A pattern of racketeering activity includes two or more acts of racketeering activity. *See* 18 U.S.C. § 1961(5). "[A] 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'" *Burzynski*, 989 F.2d at 742. "It is this factor of continuity plus relationship which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. Continuity requires that the related acts "constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 742 (citing *H.J. Inc*., 492 U.S. at 239). Continuity can be proved by "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *H.J.*

- 8 -

> *Inc.*, 492 U.S. at 241. "A closed period of conduct may be demonstrated 'by proving a series of related predicates extending over a substantial period of time,'" while "[a]n open period of conduct involves the establishment of 'a threat of continued racketeering activity.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (citing *H.J. Inc.*, 492 U.S. at 242).

*Clapper v. Am. Realty Invs., Inc.*, (*Clapper III*), 2016 WL 302313, at *7 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.).

C

Defendants[4] maintain that Maiden has not met Rule 9(b)'s heightened requirements for pleading mail fraud, wire fraud, or bank fraud, and instead complains without detail of "[a]t least thirty-four transfers from September 15, 2014 through September 15, 2020," DSS 3-30-21 Br. (ECF 24) at 11 (quoting Compl. ¶ 89); Maiden fails to plead a pattern of racketeering because all of the alleged fraud is part of a single transaction or scheme, "i.e. that Defendants 'fraudulently transferred [RBC Sciences'] assets to the DSS Defendants, without assumption of any of [RBC Sciences'] liabilities, and leaving [RBC Sciences] a shell corporation," *id.* at 13 (ellipsis and original brackets omitted; new brackets added); Maiden has not pleaded open-ended continuity because there is no allegation of a threat of repetition extending indefinitely into the future, *id.* at 14; and Maiden has not pleaded closed-ended continuity because the predicate acts that can form the basis for its RICO claim occurred

---

[4]In their briefs, defendants makes similar arguments regarding Maiden's RICO claim. For ease of reference, the court will refer to the briefing of the DSS Defendants unless otherwise specified.

- 9 -

from September 2019 to March 2020, when the lawsuit was filed, *id*. at 15.

Maiden responds that it has sufficiently pleaded that defendants engaged in a scheme to fraudulently take over RBC Sciences' assets while it was insolvent by alleging a series of fraudulent transfers to effectuate DSS's control, manipulate public disclosures, and disadvantage RBC Sciences' creditors; Maiden need not plead the time, date, amount, and account number for every instance of fraud; it has pleaded closed-ended continuity by alleging activity from October 2017 to January 2021; and it has pleaded open-ended continuity because the DSS subsidiaries continue to operate with fraudulently acquired assets of RBC Sciences to the disadvantage of RBC Sciences' creditors.

Defendants reply that Maiden has failed to address this court's ruling in *Clapper III* that "continuity cannot be established by multiple acts of fraud that are part of a single transaction[,]" DSS 5-18-21 (ECF 38) Br. at 2 (citing *Clapper III*, 2016 WL 302313, at *8); Maiden complains of only one fraudulent transaction that has since ended—i.e., the transfer of RBC Sciences' assets to the DSS Defendants—which does not constitute a pattern of racketeering; the pleaded predicate acts span at most seven months, which is insufficient to establish closed-ended continuity; and defendants' use of RBC Sciences' assets are not a threat of continued racketeering activity" sufficient to establish open-ended continuity.

D

The court concludes that the complaint does not plausibly plead a civil RICO claim because the predicate acts lack continuity and the complaint therefore fails to adequately allege a pattern of racketeering activity.

This court addressed a similar civil RICO claim in *Clapper III*, 2016 WL 302323. There the plaintiffs alleged that the defendants conspired to fraudulently transfer assets to prevent the plaintiffs from collecting under a judgment by transferring assets, filing false reports with the SEC, backdating and falsely notarizing documents, and filing for bankruptcy to avoid enforcement of the judgment. *Id.* at *9. In analyzing whether the plaintiffs had pleaded continuity sufficient to state a RICO claim, the court held:

> "Continuity cannot be established by multiple acts of fraud that are part of a single transaction." *Orthoflex*, 2012 WL 2864510, at *3 (citing *Word of Faith*, 90 F.3d at 123); *see also Burzynski*, 989 F.2d at 734 ("All of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended . . . . The conduct did not constitute or threaten long-term criminal activity."); *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991) ("there is no threat here of continued criminal acts. [Defendant's] acts which were alleged to have deprived [plaintiff] of a property interest were, when completed, without threat of repetition."); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988) ("Delta has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate [merger]."). When this is the case, "[t]he conduct d[oes] not constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 743; *see also Calcasieu*, 943 F.2d at 1464 ("Short-term criminal conduct is not the concern of RICO.").

*Clapper III*, 2016 WL 302313, at *8.

Maiden's RICO allegations are similar to those of the plaintiffs in *Clapper III*. The instant alleged predicate acts started in or around September 2019 and consist of wire transfers among defendants, transmission of notes and agreements by which RBC Sciences' assets were eventually transferred to DSS's subsidiaries, and transmission of related UCC-1

statements and SEC filings. According to the complaint, all of these acts were in furtherance of a "scheme to assume control of [RBC Sciences], misappropriate [RBC Sciences'] assets to establish RBC International and support DSS' other subsidiaries, for the purposes of enriching themselves at the expense of Maiden and [RBC Sciences'] other creditors." Compl. ¶ 85.

Like plaintiffs in *Clapper III*, Maiden has "pleaded multiple acts of fraud and other criminal acts that together enabled defendants to defraud plaintiff[] by rendering [RBC Sciences] judgment proof." *Clapper III*, 2016 WL 302313, at *10. In other words, "defendants' acts are all part of their alleged fraudulent scheme to avoid payment of the judgment entered against [RBC Sciences], and, once completed, do not threaten repetition." *Id*. RBC Sciences' assets have allegedly already been transferred to certain defendants; accordingly, under the facts alleged in the complaint, "there is no threat of continued criminal activity regarding [RBC Sciences'] assets, and [Maiden] has failed otherwise to plead conduct that constitutes or threatens long-term criminal activity." *Id*. The court holds that Maiden has not adequately pleaded continuity because there is no continuous threat of criminal activity. *See also Delta Truck & Tractor, Inc*., 855 F.2d at 242 (affirming dismissal of civil RICO claim where plaintiff alleged multiple acts of fraud related to the appropriation of business assets of plaintiff and other 400 other franchisees because all of the acts were part and parcel of a single, discrete, and otherwise lawful commercial business acquisition and related efforts to consolidate). The court therefore dismisses count I, Maiden's civil RICO claim.

IV

The court next turns to Maiden's TUFTA claim.

A

To establish a claim under TUFTA, a plaintiff must plausibly plead that (1)[it] is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *Clapper v. Am. Realty Invs., Inc.*, 2015 WL 3504856, at *6 (N.D. Tex. June 3, 2015) (Fitzwater, J.) (citing *Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 344 (5th Cir.2014) (per curiam)). TUFTA allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made. *See* Tex. Bus. & Com. Code Ann. §§ 24.008, 24.009; *Mack v. Newton*, 737 F.3d 1343, 1361 (5th Cir. 1984) (addressing TUFTA's predecessor, the Uniform Fraudulent Conveyance Act, and noting that the statute "does not provide for recovery other than recovery of the property transferred or its value from one who is, directly or indirectly, a transferee or recipient thereof."). "TUFTA further specifies that the creditor may recover against "the first transferee of the asset or the person for whose benefit the transfer was made[.]" *Janvey v. Barr*, 2015 WL 12681608, at *2 (N.D. Tex. Aug. 5, 2015) (Godbey, J.).

B

Maiden alleges that unspecified defendants "fraudulently transferred [RBC Sciences], RBC USA, and RBC Subsidiaries' assets to DSS' control to avoid, hinder and delay Maiden and other creditors," Compl.¶ 64; that DSS, Decentralized, HWH, RBC International, RBC

Sciences, and Heuszel "accepted and took some or all of the benefits derived from those transfers and assets," *id.*; and that RBC Sciences transferred its assets to Decentralized, HWH, and RBC International, who transferred the assets to DSS and Heuszel, insiders of RBC Sciences, *id.* at ¶ 66. The complaint alleges that the fraudulently transferred assets include RBC Sciences' inventory, a distributor network, bank accounts, trademarks, product formulas, patent, and physical assets and company records relating to the property and business operations. *Id.* at ¶ 27.

C

DSS and RBC International move to dismiss Maiden's TUFTA claim against them for failure to state a claim.

1

Regarding RBC International, these defendants maintain that the complaint is devoid of facts demonstrating that RBC International benefited from the transfer of RBC Sciences' assets to HWH; that Maiden only alleges that "RBC International was formed in November 2019 to continue the ongoing business of [RBC Sciences] and sell [RBC Sciences'] products under the DSS umbrella," DSS 3-30-21 Br. (ECF 24) at 18 (quoting Compl.¶ 26); that, like the plaintiffs in *Clapper III*, 2016 WL 302313, at *13, Maiden has failed to plead facts that explain how the alleged fraudulent transfers resulted in RBC International's receiving actual benefits; and that Maiden has not alleged that RBC International was a guarantor of RBC Sciences, a shareholder of HWH, or the debtor.

Maiden posits that RBC International is a beneficiary and transferee of the fraudulent

- 14 -

transfers "because it was created for the sole purpose of receiving and utilizing [RBC Sciences'] assets"; and RBC International acquired all of RBC USA's capital stock and the unfettered use of [RBC Sciences'] intellectual property for no consideration. P. 5-4-21 Br. (ECF 37) at 28.[5]

2

Taking the allegations of the complaint as true and construing them in the light most favorable to Maiden, the court holds that Maiden has sufficiently pleaded that RBC International was a transferee of an RBC Sciences' asset.

Maiden alleges that RBC Sciences "also 'sold' 100% of RBC USA's Capital Stock to RBC International for the alleged payment of $200,000. RBC USA was the primary asset of [RBC Sciences] and likely worth more than $7,500,000 in December 2019." Compl. ¶ 48. In other words, Maiden alleges that RBC International was the transferee of RBC USA's capital stock, the "primary asset" of RBC Sciences. *Id.*

3

Regarding DSS, defendants posit that Maiden has only made vague, unsupported allegations that entities entered into fraudulent transactions "on behalf of DSS" or that DSS "effectively" entered into such transactions through other entities; and that Maiden has not sufficiently alleged that DSS is liable as the parent company of other entities because the complaint is devoid of facts demonstrating that DSS is anything other than a legal entity

---

[5]RBC International does not further argue in its reply why Maiden's TUFTA claim against it should be dismissed.

separate and distinct from its subsidiaries.

Maiden responds that it has pleaded facts demonstrating that DSS, through Heuszel its CEO, "orchestrated this scheme along with the other Defendants to benefit DSS," P. 5-4-21 Br. (ECF 37) at 26; and that DSS benefited because it formed subsidiaries to take over RBC Sciences' assets without paying anything to RBC Sciences, arranged for its consultant to be named acting CEO of RBC Science, allowed the *Maiden-MPM* Suit to enter default, directed or assented to its subsidiaries' executions of the notes and transfers of RBC Science's assets, and "manipulated its public disclosures with the SEC," *id.* at 27.

Defendants maintain that Maiden has failed to address controlling precedent that a plaintiff does not plead a sufficient claim under TUFTA against a parent company by alleging that the parent directed a subsidiary's actions and that the allegation of a parent-child relationship alone is insufficient to state a claim against a parent under TUFTA.

4

Maiden has not alleged that DSS was the transferee of any asset of RBC Sciences or that it benefited from any asset transfer directly. Rather, Maiden only alleges that DSS benefited in its role as the parent of subsidiaries who allegedly benefited from the transfers. Because Maiden has not pleaded facts that enable the court to draw the reasonable inference that DSS is liable for the alleged actions of its subsidiaries, Maiden has not plausibly pleaded a claim under TUFTA against DSS.

D

RBC Sciences and Brown also move to dismiss Maiden's TUFTA claim.

1

RBC Sciences and Brown contend that HWH had a valid lien against RBC Sciences' assets prior to Maiden's status as a judgment creditor, and, therefore, that RBC Sciences' assets are excluded from the definition of "asset" under TUFTA; that the complaint is devoid of facts demonstrating that RBC Sciences and/or Brown benefited from the transfer of RBC Sciences' assets to HWH; that Maiden's sole allegation on this point is that "RBC International was formed in November 2019 to continue the ongoing business of [RBC Sciences] and sell [RBC Sciences'] products under the DSS umbrella," RBC Sciences 3-30-21 Br. (ECF 20) at 19 (quoting Compl. ¶ 26); that the only allegations as to RBC Sciences and Brown are that Brown "on behalf of [RBC Sciences]," entered into valid notes and security agreements; and that Maiden's failure to allege an unjust enrichment claim against RBC Sciences or Brown is a concession that neither defendant received any benefit from the transfers. RBC Sciences 3-30-21 Br. (ECF 20) at 16-21.

Maiden responds that it has alleged that defendants do not have a valid lien on RBC Sciences' assets based on its fraudulent transfer allegations, and the court must accept its pleaded facts as true; RBC Sciences has benefited from the transfer because its "reputable business and products continue to survive under the DSS umbrella without the burden of its millions of dollars of debt," P. 5-20-21 Br. (ECF 39) at 24); and Brown was "expected to retain an ownership interest from the transfer," but did not, *id*.

2

Accepting the allegations of Maiden's complaint as true, the court holds that Maiden has not plausibly pleaded a TUFTA claim against RBC Sciences or Brown. Maiden has not alleged that RBC Sciences or Brown was a transferee of any RBC Sciences asset or that either defendant benefited from the transfers. Instead, Maiden maintains only that Brown was "expected to" have ownership interest in RBC Sciences' assets after the transfer, and that RBC Sciences' products are now sold under the DSS umbrella. Maiden acknowledges that RBC Sciences received no payment for its assets and that Brown did not have an ownership interest in RBC Sciences' assets.

Accordingly, the court dismisses Maiden's TUFTA claim against DSS, RBC Sciences, and Brown, but it declines to dismiss Maiden's TUFTA claim against RBC International.

V

DSS and RBC International move to dismiss Maiden's unjust enrichment claim, contending that "'Texas law does not recognize an independent cause of action for unjust enrichment.'" DSS 3-30-21 Br. (ECF 24) at 21 (quoting *Taylor v. Trevino*, 2021 WL 347566, at *12 (N.D. Tex. Feb. 2, 2021) (Fitzwater, J.)). Maiden responds that it can recover under the theory of unjust enrichment because DSS and RBC International obtained RBC Sciences' assets by fraud.

As this court recently held, unjust enrichment is not an independent cause of action under Texas law. *Taylor*, 2021 WL 347566, at *12 (citing *Hancock v. Chi. Title Ins. Co.*, 634 F.Supp.2d 539, 560-61 (N.D. Tex. 2009) (Fitzwater, C.J.), and *Redwood Resort Props.,*

*LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 26, 2006) (Fitzwater, J.)). Accordingly, the court dismisses this claim.

VI

The court grants Maiden leave to replead. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Because Maiden has not stated that it cannot, or is unwilling to, cure the defects that the court has identified, the court grants it 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

\* \* \*

For the foregoing reasons, the court grants in part and denies in part the DSS Defendants' motion to dismiss,[6] grants the RBC Defendants' motion to dismiss, grants

---

[6] As noted, Maiden's declaratory judgment claim is not the subject of this memorandum opinion and order. *See supra* note 2.

Howard's motion to dismiss, and grants Maiden leave to replead.

**SO ORDERED**.

August 9, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE