IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAIDEN BIOSCIENCES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:21-CV-0327-D |
| | § | |
| DOCUMENT SECURITY SYSTEMS, | § | |
| INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Maiden Biosciences, Inc. ("Maiden") brings this collection action against six defendants,[1] seeking to recover the judgment that Maiden obtained in *Maiden Biosciences, Inc. v. MPM Medical, Inc.*, No. 3:18-CV-1354-D (N.D. Tex. filed Oct. 16, 2017) (Fitzwater, J.) (the "*Maiden-MPM* Suit").[2] Maiden's amended complaint asserts a single fraudulent transfer claim under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (West 2021), against defendants Document Security Systems, Inc. ("DSS"), Decentralized Sharing Systems, Inc. ("Decentralized"), HWH World Inc. f/k/a Bliss International Inc. ("HWH"), RBC Life Sciences, Inc. ("RBC Sciences"), RBC Life International, Inc. ("RBC International"), and Frank D. Heuszel ("Heuszel"). In one

---

[1]Two defendants included in Maiden's original complaint ("complaint") are mentioned in Maiden's amended complaint but are not named as defendants: Steven E. Brown ("Brown") and Andrew Howard.

[2]The *Maiden-MPM* Suit was filed in the District of Maryland on October 16, 2017 and transferred to this court on May 29, 2018.

motion, defendant RBC Sciences and (if applicable) Steven E. Brown ("Brown") (collectively, the "RBC Defendants"),³ move to dismiss under Fed. R. Civ. P. 12(b)(6). In a separate motion, defendants DSS, Decentralized, HWH, RBC International, and Heuszel (collectively, the "DSS Defendants") also move to dismiss under Rule 12(b)(6). For the reasons that follow, the court grants the DSS Defendants' motion, grants in part and denies in part the RBC Defendants' motion, and grants Maiden leave to replead.

I

Because the court has already addressed in some detail the background facts and procedural history of this lawsuit, *see Maiden Biosciences, Inc. v. Document Security Systems, Inc.*, 2021 WL 3492339, *1-2 (N.D. Tex. Aug. 9, 2021) (Fitzwater, J.) ("*Maiden I*"), it will briefly summarize them.⁴

In 2017 Maiden filed the *Maiden-MPM* Suit against, *inter alia*, RBC Sciences.⁵

---

³As noted, *see supra* note 1, Brown is no longer a defendant. For clarity, the court will refer to RBC Sciences and Brown collectively, the "RBC Defendants," although it recognizes that Brown is no longer a defendant.

⁴The amended complaint differs in some respects from the complaint. Where relevant, the court will note the differences.

⁵Maiden's amended complaint appears to refer to evidence outside the pleading, including the deposition of Brown. Although courts cannot ordinarily consider materials outside the pleadings in deciding a motion to dismiss, they may do so when those documents are attached to the plaintiff's pleading or attached to the defendant's motion to dismiss and central to the plaintiff's claims and referred to in the plaintiff's complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."). Maiden has not attached the deposition to its amended complaint, so the court will not consider the deposition of Brown that is referred to in the

Around September 2019 RBC Sciences yielded control of its physical assets to DSS. In October 2019 RBC Sciences entered into a secured convertible note with DSS and Decentralized (a DSS subsidiary) and gave them a security interest in its assets as collateral (the "First Note"). In November 2019 RBC Sciences entered into a secured revolving convertible note (the "Second Note") with HWH (a DSS subsidiary) and gave HWH a security interest in its assets as collateral.[6] And in December 2019 RBC Sciences sold its stock in RBC USA and its intellectual property to RBC International (a DSS subsidiary).

In January 2020 RBC Sciences defaulted on the First Note, and DSS and Decentralized took RBC USA's assets as collateral. In February 2020 RBC Sciences defaulted on the Second Note, and HWH took RBC Sciences' remaining assets—including other RBC subsidiaries' ("RBC Subsidiaries'") assets—as collateral. In March 2020 Maiden obtained a default judgment against RBC Sciences in the *Maiden-MPM* Suit for $4.3 million.

In *Maiden I* the court dismissed Maiden's TUFTA claim against DSS, RBC Sciences, and Brown, but not RBC International. *Maiden I*, 2021 WL 3492339, at *8. The court dismissed the claim against these defendants because Maiden failed to allege that DSS, RBC Sciences, and Brown were transferees or beneficiaries of the allegedly fraudulent transactions. *Id.* at *7-8. It allowed Maiden, however, to file an amended complaint, which Maiden has. The RBC Defendants and the DSS Defendants now move in separate motions

---

amended complaint.

[6]The pleading asserts that RBC USA (an RBC subsidiary) and other RBC subsidiaries guaranteed the loan obligations for the Second Note but not the First Note.

to dismiss the amended complaint under Rule 12(b)(6). Maiden opposes the motions, and, in the alternative, requests leave to replead. The court is deciding the motions on the briefs.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] amended complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive defendants' Rule 12(b)(6) motions to dismiss, Maiden must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court considers first whether Maiden is a "creditor" under TUFTA.

A

The RBC Defendants and the DSS Defendants contend that Maiden lacks standing under TUFTA[7] to challenge RBC USA's and the RBC Subsidiaries' transfer of their assets because Maiden is not a "creditor" of RBC USA or the RBC Subsidiaries; that Maiden's creditor status with regard to RBC Sciences does not extend to RBC USA or the RBC Subsidiaries because of the corporate separateness between the companies; and that Maiden has failed to plead a specific veil-piercing theory, or, in the alterative, has failed to plead sufficient facts to support a veil-piercing theory.

Maiden responds that it has statutory standing to challenge RBC USA's and the RBC Subsidiaries' transfers of assets because RBC Sciences—whom Maiden *is* a creditor of—directed and controlled RBC USA's and the RBC Subsidiaries' actions, and abused its corporate form. Maiden posits that RBC Sciences directed and controlled its subsidiaries' actions by using the assets to guarantee a loan for itself, and that RBC Sciences abused its corporate form by manipulating a subsidiary to commit fraud.

---

[7]In their motions, the RBC Defendants and the DSS Defendants mention both constitutional and statutory standing. But they appear to clarify in their reply briefs that they only challenge statutory standing.

B

The court holds that Maiden is not a "creditor" of RBC USA or the RBC Subsidiaries and that it has not pleaded a corporate-veil-piercing theory. Therefore, it cannot challenge the transfer of RBC USA's or the RBC Subsidiaries' assets.

"To establish a claim under TUFTA, a plaintiff must prove *inter alia* that (1)[it] is a 'creditor' with a claim against a 'debtor.'" *Clapper v. Am. Realty Inv'rs, Inc.*, 2015 WL 3504856, at *6 (N.D. Tex. June 3, 2015) (Fitzwater, J.) (alteration in original) (citation omitted). A "creditor" is defined as a "person . . . who has a claim." Tex. Bus. & Com. Code Ann. § 24.002(4) (West 2021). And a "claim" is defined as a "right to payment or property." *Id.* § 24.002(3).

There is no question—and the parties do not dispute—that Maiden is a "person . . . who has a claim" *against RBC Sciences*. The amended complaint alleges that Maiden obtained a default judgment against RBC Sciences in the *Maiden-MPM* Suit for $4.3 million in March 2020. Accordingly, Maiden has plausibly pleaded that is a "person" who has "a right to payment" (i.e., a claim) against RBC Sciences, so it has plausibly pleaded that it is a creditor of RBC Sciences.

But it is equally clear that Maiden is *not* a "person . . . who has a claim" against RBC USA or the RBC Subsidiaries. The amended complaint does not allege that Maiden ever obtained a judgment against RBC USA or the RBC Subsidiaries. And it does not assert that Maiden had any other legal right to payment or property from these entities. In fact, the amended complaint narrowly focuses on RBC Sciences' debt to Maiden, but does not address

any similar debt owed by RBC USA (although the amended complaint does allege that RBC USA is a subsidiary of RBC Sciences) or the RBC Subsidiaries. Accordingly, the amended complaint does not plead a plausible basis under TUFTA for Maiden to challenge RBC USA's and the RBC Subsidiaries' transfer of assets to DSS, Decentralized, and HWH.

C

Maiden offers theories to support its request that the court disregard the corporate separateness between RBC Sciences and RBC USA and the RBC Subsidiaries, but Maiden does not plausibly plead these theories.

"It is fundamental under Texas corporate law that a parent corporation and its subsidiaries are distinct legal entities." *Salomon v. Kroenke Sports & Entm't, LLC*, 2019 WL 10631256, at *8 (N.D. Tex. Feb. 27, 2019) (Lynn, C.J.) (citing *Pulaski Bank & Tr. Co. v. Tex. Am. Bank, N.A.*, 759 S.W.2d 723, 731 (Tex. App. 1988, writ denied)). Under certain circumstances, Texas law permits the court to disregard the corporate veil. *See Williams v. Reifsteck*, 1997 WL 419554, at *3 (N.D. Tex. July 8, 1997) (Fitzwater, J.). "This veil-piercing doctrine applies in various scenarios, including 'when the [corporate] fiction is used as a means of perpetrating fraud.'" *Ledford v. Keen*, 9 F.4th 335, 339 (5th Cir. 2021) (alteration in original) (citation omitted).

But under Texas law,[8] a party must plead its veil-piercing theory. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991) ("A trial court judgment must conform to the

---

[8]The parties do not dispute that Texas law applies.

pleadings of the parties. The Carters did not plead alter ego, piercing the corporate veil or agency." (citation omitted)); *Town Hall Estates-Whitney, Inc. v. Winters*, 220 S.W.3d 71, 86 (Tex. App. 2007, no pet.) ("Various theories exist for 'piercing the corporate veil' or disregarding the corporate form. These theories must be specifically pleaded or they are waived, unless they are tried by consent." (footnote omitted)). And Maiden has failed to plead plausible veil-piercing theories. While Maiden alleges some facts that may support such a theory, the amended complaint does not contain any veil-piercing theories per se.[9] *See Cedillo v. Medrano Campos*, 2014 WL 12479202, at *5 (W.D. Tex. Dec. 19, 2014) ("[T]here is absolutely nothing in the petition to support an argument that Plaintiffs seek to pierce the corporate veil."), *rec. adopted*, 2015 WL 11438111 (W.D. Tex. Sept. 30, 2015); *Pemex Exploracion y Produccion v. BASF Corp.*, 2013 WL 5514944, at *65 (S.D. Tex. Oct. 1, 2013) (suggesting that "a [veil-piercing] theory cannot be asserted for the first time in response to a motion for summary judgment" but must be pleaded); *Quinn v. Workforce 2000, Inc.*, 887 F. Supp. 131, 135 (E.D. Tex. 1995) (rejecting argument to pierce corporate veil because "[plaintiff] did not specifically plead or allege any basis for disregarding the corporate fiction.").

---

[9]Maiden posits that it has pleaded enough facts for the court to conclude that the veil should be pierced. The court does not reach this argument because it concludes that Maiden has failed to plead any theory.

- 8 -

D

The court concludes that Maiden has failed to plausibly plead that it is a "creditor" of RBC USA or the RBC Subsidiaries, and has failed to plead any corporate-veil-piercing theories, and therefore has failed to plead a plausible TUFTA claim for transfers made by RBC USA or the RBC Subsidiaries.

IV

The court next considers whether Maiden has plausibly pleaded that RBC Sciences transferred any "assets," as defined under TUFTA.

A

The RBC Defendants contend that TUFTA requires that an "asset" has been transferred and excludes a "valid lien" from the definition of "asset." The RBC Defendants maintain that DSS, Decentralized, and HWH had "valid liens" on RBC Sciences' assets such that they were not "assets," as defined by TUFTA. Maiden posits that this argument has been foreclosed by *In re 3 Star Properties, L.L.C.*, 6 F.4th 595 (5th Cir. 2021), where the Fifth Circuit held that liens made as a part of a fraudulent transfer are not considered "valid liens" under TUFTA. The RBC Defendants contend that the case law that Maiden cites is distinguishable.

B

The court holds that the RBC Defendants' assets at issue are "assets," as defined under TUFTA, because Maiden has plausibly pleaded that the liens of DSS, Decentralized, and HWH were not "valid liens," as defined in TUFTA. Under TUFTA, a creditor may

prevent "a *transfer*" that is fraudulent. Tex. Bus. & Com. Code Ann. § 24.005(a) (West 2021). A "transfer" means disposing of or parting with an "asset." *Id.* § 24.002(12). An "asset" is "property of a debtor," excluding "property . . . encumbered by a valid lien." *Id.* § 24.002(2)(A). And a "valid lien" is "a lien that is effective against the holder of a judicial lien subsequently obtained . . . ." *Id.* § 24.002(13).

A lien that is conferred as part of a fraudulent scheme is not a "lien that is effective" (i.e., a "valid lien."). *3 Star Props.*, 6 F.4th at 608; *Mullins v. TestAm., Inc*., 564 F.3d 386, 416 (5th Cir. 2009) (holding that, "if the circumstances surrounding the lien's creation are themselves part of the alleged fraudulent transfer," the lien is invalid).

The court holds that *3 Star Properties*, combined with the allegations of the amended complaint, precludes RBC Defendants' argument. In *3 Star Properties* the Fifth Circuit held that a fraudulent "transfer" under TUFTA can include the creation of the lien. *3 Star Props*., 6 F.4th at 608. And a fraudulently created lien is not a "valid lien." *Id.* The amended complaint alleges that the liens are fraudulent liens—and therefore not valid liens. *See* Am. Compl. at ¶ 33 ("DSS then pivoted to relying on a fraudulent series of 'loans' to try and legitimize its takeover of RBC Sciences."); *id*. at ¶ 44 ("Defendants knew that RBC would be unable to repay any debt"); *id*. at ¶ 67 ("The security interest on RBC Sciences' assets was not obtrained in good faith or for reasonably equivalent value. DSS obtained its security interest for the purpose of taking title to RBC Sciences' assets free of other creditors' valid

claims and without paying their full value.").[10]

And even if the amended complaint did not allege that the lien itself was fraudulent, *3 Star Properties* holds that a lien (even one that is not itself fraudulent) is not a "valid lien" if part of a larger fraudulent scheme. *3 Star Props.*, 6 F.4th at 608. The amended complaint asserts that the lien was a part of a fraudulent scheme. Am. Compl. at ¶ 33 ("DSS then pivoted to relying on a fraudulent series of 'loans' to try and legitimize its takeover of RBC Sciences."); *id.* at 12 (titling section "The Scheme Comes to Fruition"). In other words, the amended complaint adequately alleges that "the circumstances surrounding the lien's creation are themselves part of the alleged fraudulent transfer," *Mullins*, 564 F.3d at 417, and the lien is therefore not a "valid lien."

The RBC Defendants seek to distinguish *3 Star Properties* based on to two factual differences: that *3 Star Properties* involved fraudulent misrepresentations in the course of

---

[10]The parties dispute the applicability of *Telephone Equipment Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601 (Tex. App. 2002, no pet.), a case cited by the Fifth Circuit in reaching its holding in *3 Star Properties*. In *Telephone Equipment* a debtor-corporation gave a security interest in all of its assets to a bank in exchange for a line of credit. *Id.* at 604. The debtor-corporation was then sued for breaching a contract with a lessor. *Id.* The CEO for the debtor-corporation subsequently formed a separate, new company that purchased the security interest in the debtor-company from the bank. *Id.* The new company moved to initiate a foreclosure sale on the debtor-corporation's assets for failure to repay the loan. *Id.* The lessor sought to prevent the sale of the assets. *Id.* The Texas Court of Appeals held that the new company's purchase of the security interest was "an integral part of the alleged fraudulent transfer of assets." *Id.* The court stated that, if at trial the lessor proved the merits of its TUFTA claims, the lien would be voidable as a part of the fraudulent transfer scheme. *Id.* at 609. The RBC Defendants seek to distinguish *Telephone Equipment* on the basis of its procedural posture: an appeal from an injunction ruling. The court need not address whether this distinction is relevant because *3 Star Properties* alone forecloses the RBC Defendants' argument.

- 11 -

creating the lien, and that in *3 Star Properties* the debtor-company was not the owner of the assets, as the Fifth Circuit highlighted.[11] The court finds these attempts to distinguish *3 Star Properties* unpersuasive.

The court begins by acknowledging that RBC Sciences was the owner of the assets while the debtor-company in *3 Star Properties* was not the owner of the assets it sold, a fact that the Fifth Circuit seemed to emphasize as important to its holding. *See 3 Star Props.*, 6 F.4th at 608 ("3 Star was never entitled to that money because it was transferred in payment for loans 3 Star never owned."). And the debtor-company in *3 Star Properties* made fraudulent misrepresentations in the course of its fraudulent scheme, while there is no allegation of misrepresentations made in the lien transactions between RBC Sciences and DSS, Decentralized, and HWH. *See id.* at 602.

But the RBC Defendants do not explain the relevance of these small factual distinctions to the Fifth Circuit's holding in *3 Star Properties* and how they should change this court's analysis. The Fifth Circuit held that the lien was invalid because it was an "instrument[] of the fraudulent transfer." *Id.* And that the lien was "[a] security interest that is 'part of [a] fraudulent transfer of assets'" that is "not a 'valid lien'" *Id.* (second alteration in original). As pleaded, the same is true here: the amended complaint alleges that the lien was a part of a fraudulent scheme and therefore was an instrument of the fraud. In fact,

---

[11]The RBC Defendants also cite *Mullins*, 564 F.3d 386, for the proposition that a lien is exempt from being considered an "asset." But to the extent *Mullins* supports that proposition, its facts are easily distinguished because the "valid lien" was a prior lien that was unrelated to the fraudulent transfer. *See id.* at 394, 414-15.

Maiden goes further in alleging that the lien itself was fraudulently made.

Accordingly, the court holds that the amended complaint contains sufficient facts to plausibly plead that "assets" were transferred.

V

The court now considers whether RBC Sciences is a "debtor" under TUFTA.

A

The RBC Defendants contend that TUFTA permits suits only against a debtor, transferee, or beneficiary of the transfer, and that Maiden has failed to plead sufficient facts to show that RBC Sciences qualifies. More precisely, they maintain that Maiden is not a debtor under TUFTA because it did not become one until after RBC Sciences transferred its assets to DSS, Decentralized, and HWH.

Maiden responds that RBC Sciences is a debtor and it has sufficiently pleaded that RBC Sciences is a debtor.

B

The court holds that Maiden has plausibly pleaded that RBC Sciences is a "debtor." TUFTA allows recovery against a debtor. *See Clapper*, 2015 WL 3504856, at *6. "Debtor" is defined as "a person who is liable on a claim." Tex. Bus. & Com. Code Ann. § 24.002(6). And a "claim" is defined as a "right to payment or property, whether or not the right is reduced to judgment." *Id.* § 24.002(3).

Maiden has adequately alleged that RBC Sciences is and was a debtor of Maiden. RBC Sciences *is currently* a debtor under this definition because Maiden has a judgment

- 13 -

against it.  RBC Sciences is therefore a "person" liable on a "claim," i.e., a "right to payment."  RBC Sciences *was* also a "debtor" in 2019 when it made the allegedly fraudulent transfers.  "Claim" includes a "disputed" right to payment that has not been reduced to judgment—i.e., a filing of a lawsuit.  *Id.*  And the amended complaint asserts that Maiden filed its claim against RBC Sciences in 2017.  Accordingly, Maiden plausibly pleads that RBC Sciences is a debtor in 2021 and was a debtor in 2019.

The RBC Defendants' counter argument—an extratextual argument using a dictionary definition of "liable" that runs counter to the statute's clear language—lacks merit.  The RBC Defendants contend that the dictionary definition of "liable" is "bound or obligated in law"; that, if a "debtor" is defined as a "person who is liable on a claim," then RBC Sciences could not have been a debtor until it was "obligated in law" on a claim; that this occurred when Maiden obtained its default judgment in March 2020; and that, if RBC Sciences did not become a debtor until March 2020, it was not a debtor in 2019, when the loans were made.

But if the court were to accept the RBC Defendants' contention that "liable" means "bound or obligated by law" (and assume that a debtor is not "bound or obligated in law" until it has a judgment against it), the RBC Defendants' definition would restrict "claim" to judgments.  The statute clearly states, however, that a "claim" includes the filing of a disputed suit not yet reduced to judgment.  The RBC Defendants' definition of "liable" (limited to judgments) would thus be inconsistent with the TUFTA definition of "claim" (which includes disputed rights to payment not reduced to judgment).  *See* Tex. Bus. & Com.

Code Ann. § 24.002(3).[12]

VI

Finally, the court turns to whether Maiden has plausibly pleaded that Heuszel is a "beneficiary" or "transferee" under TUFTA.

A

The DSS Defendants contend that Heuszel is not a "transferee" because he has not obtained a property interest in any assets of RBC Sciences; that he is not a "beneficiary" because the amended complaint only contains conclusory allegations that Heuszel received benefits; and that *Clapper* controls and precludes any claim that Heuszel is a beneficiary.

Maiden responds that Heuszel is a beneficiary because he received personal benefits from the transfer in the form of his numerous positions within DSS and its subsidiaries.

B

The court concludes that Maiden has failed to plausibly plead that Heuszel is a transferee. TUFTA allows recovery against a transferee. *See* Tex. Bus. & Com. Code Ann. §§ 24.008, 24.009 (West 2021); *Clapper*, 2015 WL 3504856, at *6. A transferee is one who

---

[12]The RBC Defendants make a second argument: that the court in *Maiden I* dismissed Maiden's claim against RBC Sciences because Maiden failed to allege that RBC Sciences was a transferee or beneficiary, as defined under TUFTA, and that Maiden did not respond to the court's "dispositive" reasoning. The court disagrees. In *Maiden I* the court focused only on whether RBC Sciences was a transferee or beneficiary because this was the question before the court—not because the court decided that RBC Sciences was not a debtor. The complaint only alleged that RBC Sciences was a transferee, and the motion to dismiss that the RBC Defendants addressed to the complaint focused on whether RBC Sciences was a transferee or beneficiary—not a debtor.

directly receives the asset or is currently in possession of the asset. *See Clapper v. Am. Realty Inv'rs, Inc.*, 2016 WL 302313, at *12 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.). In other words, a transferee is one who has a "property interest" in the assets at issue. *See Ron v. Ron*, 836 Fed. Appx. 192, 195 (5th Cir. 2020) (per curiam) ("The magistrate judge held that [plaintiff's] claim failed because [defendant] did not benefit from or receive a property interest in the alleged fraudulent transfer of community property. We agree with this reasoning."). The amended complaint does not contain sufficient facts for the court to draw the reasonable inference that Heuszel personally had an interest in the property at issue. Despite allegations that he "controls" RBC Sciences' assets through his executive positions, the amended complaint fails to allege facts that Heuszel himself is " transferee[] or owner[] of any of the assets." *Clapper*, 2016 WL 302313, at *13.

The court also holds that Maiden has also failed to plausibly plead that Heuszel is a beneficiary. TUFTA allows recovery against the person for whose benefit the transfer was made. *See* Tex. Bus. & Com. Code Ann. §§ 24.008, 24.009; *Clapper,* 2015 WL 3504856, at *6. "In general, parties for whose benefit a transfer is made are those 'entities that benefit as guarantors of the debtor, or otherwise, without ever holding the funds.'" *Janvey v. Barr*, 2015 WL 12681608, at *4 (N.D. Tex. Aug. 5, 2015) (Godbey, J.) (citations omitted). The amended complaint alleges that Heuszel benefited because he held numerous positions with various entities, including serving in executive positions of RBC International, HWH, and Decentralized, and "he and Decentralized had assumed control of RBC Sciences' assets." Am. Compl. at ¶ 80. But the amended "complaint does not plead facts that explain *how* the

- 16 -

alleged fraudulent transfers resulted in these benefits." *Clapper*, 2016 WL 302313, at *13 (emphasis added). The allegation that Heuszel "benefited" from his employment positions is conclusory and does not explain how these positions benefited him. *Clapper,* 2015 WL 3504856, at *6 (holding that allegations that defendants received "personal gain and benefit" were conclusory). This allegation does not enable the court to draw the reasonable inference that Heuszel received any specific benefit from this employment (like an increased salary) besides the employment itself. *See id.*[13]

### VII

Although the court is granting the DSS Defendants' motion and granting in part the RBC Defendants' motion to dismiss, it will permit Maiden to replead.

First, when the court in *Maiden I* decided the motions to dismiss addressed to Maiden's complaint, it did not address any of the issues addressed in this memorandum opinion and order except whether RBC Sciences was a transferee or beneficiary—an issue on which Maiden has prevailed today. *See supra* § V.

Second,

> [i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable

---

[13]The RBC Defendants also contend that attorney's fees are not recoverable from them because Maiden has no viable claims against them under TUFTA and attorney's fees require proof of actual damages. The court need not reach this contention because today's decision does not dismiss in its entirety Maiden's TUFTA claim against the RBC Defendants.

> or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (alteration in original) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002)). It is not clear that all of the defects in the amended complaint are incurable, and Maiden has not advised the court that it is unwilling or unable to amend in a manner that will avoid dismissal. Accordingly, the court grants Maiden 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

\* \* \*

Accordingly, for the reasons explained, the court grants in part and denies in part the RBC Defendants' motion to dismiss, grants the DSS Defendants motion to dismiss, and grants Maiden leave to replead.

**SO ORDERED**.

November 19, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE