IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MAIDEN BIOSCIENCES, INC., § § Plaintiff, § § VS. § DOCUMENT SECURITY SYSTEMS, § INC., et al., § § Defendants. § | Civil Action No. 3:21-CV-0327-D |

MEMORANDUM OPINION
AND ORDER

Defendants DSS, Inc. ("DSS"), Decentralized Sharing Systems, Inc. ("Decentralized"), HWH World, Inc. f/k/a Bliss International Inc. ("HWH") and RBC Life International, Inc. (collectively, the "DSS Defendants") and RBC Life Sciences, Inc. ("RBC Sciences") move to exclude the testimony of Jeffrey Compton ("Compton"), whom plaintiff Maiden Biosciences, Inc. ("Maiden") intends to call as an expert witness at trial.[1]  For the reasons that follow, the court denies the motions.

I

The court assumes the parties' familiarity with its prior memorandum opinions and orders in this case, *see Maiden Biosciences, Inc. v. Document Security Systems, Inc.*, 2021 WL 5416603 (N.D. Tex. Nov. 19, 2021) (Fitzwater, J.); *Maiden Biosciences, Inc. v.*

---

[1] Maiden also moves to strike the reply appendixes filed by RBC Sciences and the DSS Defendants.  Because the court has not considered these appendixes in denying defendants' motions, the court denies Maiden's motion to strike.

*Document Security Systems, Inc.*, 2021 WL 3492339 (N.D. Tex. Aug. 9, 2021) (Fitzwater, J.), and recounts the facts and procedural history only as necessary to understand this decision.

In this collection action, Maiden alleges a single claim for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (West 2021). It alleges, *inter alia*, that RBC Sciences transferred its assets and those of its subsidiaries ("RBC Assets") to DSS's control in order to avoid, hinder, and delay Maiden and other creditors. Maiden has designated Compton as an expert to offer opinions on, *inter alia*, whether RBC Sciences received reasonably equivalent value from the DSS Defendants ("Opinion A"); whether RBC Sciences was insolvent or became insolvent after the alleged transfers ("Opinion B"); and (3) whether any TUFTA "badges of fraud" were present at the relevant times ("Opinion C").

The DSS Defendants move to exclude Compton's Opinions A, B, and C. RBC Sciences moves to exclude "any expert testimony of Jeffrey Compton either at the trial or at any hearing in this case." RBC Sciences Mot. 1 (capitalization omitted).[2] Maiden opposes the motions, which the court is deciding on the briefs.

---

[2] In support of its motion, RBC Sciences "relies upon and adopts" the DSS Defendants' motion to exclude. RBC Sciences Mot. 3. Accordingly, in this memorandum opinion and order the court does not distinguish between arguments set out in the DSS Defendants' brief and those contained in RBC Sciences' brief.

II

The court decides these motions in its role as gatekeeper concerning the admissibility of expert testimony. *See, e.g.*, *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) ("Under *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)], Rule 702 charges trial courts to act as 'gate-keepers[.]'" (citation omitted)). "[W]hile exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id*. at 250. The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable. *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

First, an expert must be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id*. (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

Second, to be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone*, 288 F.3d at 245 (quoting *Daubert*, 509 U.S. at 591). "Relevance depends upon 'whether [the expert's] reasoning or

- 3 -

methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593).

Third, "[r]eliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* (quoting *Daubert*, 509 U.S. at 592-93). The testimony must constitute "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See id.* at 592 n.10. The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (per curiam). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III

Defendants move to exclude Compton's Opinions A, B, and C, contending that his methods of valuation, on which the opinions are based, are unhelpful and unreliable.

### A

Defendants maintain that, because Compton's valuation opinions merely repackage

facts, witness testimony, and documents without applying specialized knowledge or experience, they are inadmissible under Fed. R. Evid. 702. According to defendants, rather than perform an independent valuation of the RBC Assets, Compton simply made cursory adjustments to RBC Sciences' October 2019 balance sheet to match the numbers to sources he relied on (such as an internal accounting memorandum ("Macko Memorandum") prepared by Todd Macko ("Macko") and a report ("IDG Report") prepared by John Fleming); that Compton's act of pulling numbers from third-party sources and comparing them to the advances under the October and November Notes does not require any application of specialized knowledge or experience to help the jury understand the facts in evidence; and that without applying any sort of expert knowledge of the value of the assets or even expertise as to the reliability of the underlying source valuations, Compton's testimony is unhelpful and therefore inadmissible.

Maiden responds that Compton's valuation opinions, which rely on data gathered from the parties, are standard in commercial cases and will assist the jury; that the professional valuation standard, VS 100, states that valuation experts can use management representations when formulating their opinions; that Compton applied his knowledge as an accountant and valuation expert to analyze RBC Sciences' balance sheet, following professional standards to decide what adjustments were required to state the fair market value of the RBC Assets; and that Compton also applied his knowledge to evaluate data from DSS's management (i.e., the Macko Memorandum), which its accountants used for public reporting and to evaluate management-supplied information from the IDG Report, which

- 5 -

Macko testified he relied on.

Compton's expert opinions on valuation are sufficiently relevant and helpful to be admissible at trial. In his expert report, Compton uses an adjusted balance sheet to estimate the fair market value of the RBC Assets. Taking RBC Sciences' October 2019 balance sheet as a starting point, Compton explains for each asset category whether an adjustment is necessary and, if so, which financial figures—some of which he pulled from DSS's internal documents—he relied on in making the adjustment and why. Contrary to what defendants argue, Compton's expert report provides more than "merely a recitation of the facts and evidence presented to him and simple arithmetic." DSS Br. 7. The report provides instead Compton's opinions—based on his specialized knowledge and expertise in the area of business valuation—concerning the adjustments to the October 2019 balance sheet that are necessary to determine the fair market value of the RBC Assets. This evidence is relevant and helpful because it will "assist the trier of fact to understand or determine a fact in issue"—namely, the fair market value of the RBC Assets. *See Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 591-92). Accordingly, Compton's expert opinions on value are sufficiently relevant and helpful to be admissible at trial.

B

Defendants next contend that Compton's valuation opinions are inadmissible because they are based on unreliable sources, i.e., the Macko Memorandum, the IDG Report, and an analysis performed by Steve Brown, the former CEO of RBC Sciences. Maiden responds,

*inter alia*, that professional valuation standards allow experts to rely, as Compton did in his report, on representations from the owners, management, and other third parties about a company's assets and liabilities, and that Compton properly relied on valuation data prepared by DSS's own Chief Financial Officer, the DSS Defendants' hand-picked consultant (who was still advising them in 2022), and RBC Sciences' former Chief Executive Officer.

As the court has already recognized above, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo*, 826 F.2d at 422. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "[O]ther than taking issue with the sources of information relied on by [Compton, the defendants have] not articulated any reason why [they believe Compton's] methodology is unreliable." *Kim v. Nationwide Mut. Ins. Co.*, ___ F.Supp.3d___, 2022 WL 2670393, at *7 (N.D. Tex. July 11, 2022) (Fitzwater, J.) (some alterations in original) (quoting *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, 2019 WL 1436659, at *10 (N.D. Tex. Mar. 31, 2019) (Lindsay, J.)). Defendants' contentions as to the bases and sources underlying Compton's valuation opinions go to the weight these opinions should receive, not to their admissibility. Defendants may advance these contentions through cross-examination. Accordingly, the court rejects defendants' challenge to Compton's valuation opinions on the ground that they are based on unreliable sources.

IV

Defendants next move to exclude Compton's opinions on the ground that they are based on two improper assumptions: (1) that the RBC Assets were "transferred" in October of 2019, and (2) that RBC's cash and inventory were acquired as collateral through the transactions with Decentralized and HWH.

A

Defendants contend that Compton's entire Opinion B, regarding insolvency, should be excluded because it is premised on the assumption that the RBC Assets were transferred in October of 2019 (prior to Compton's measurement dates of October 31, 2018 and April 2022), but the evidence conclusively establishes that the RBC Assets were not actually transferred from RBC Sciences' ownership until the acceptance of collateral on February 7, 2020 and the foreclosure sale on April 23, 2020. Defendants maintain that several of Compton's opinions are based on the assumption that all of the RBC Assets were transferred to Decentralized or HWH, but that the evidence shows that Decentralized and HWH did not receive any cash or inventory from RBC as collateral, and Compton's reliance on this improper assumption results in an overstated value of the RBC Assets.

Maiden responds that, in general, the use of assumptions does not render an expert's opinion unreliable. Maiden maintains that it was reasonable for Compton to assume that the RBC Assets were transferred in October 2019 because that is when the DSS Defendants took control of RBC Sciences and its subsidiaries. Maiden posits that it was reasonable for Compton to assume that *all* of the RBC Assets were transferred to the DSS Defendants

because DSS's CEO, Frank Heuszel, admitted this, and, regardless, the question whether the DSS Defendants received cash or inventory in the transfers is one of fact for the jury.

B

"[E]xperts are permitted to assume the underlying facts that form the basis for their opinions." *Cromwell v. Wal-Mart Stores, Inc.*, 46 Fed. Appx. 733, 2002 WL 1973906, at *2 (5th Cir. Aug. 9, 2002) (per curiam) (citing *Daubert*, 509 U.S. at 592). And when "the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *Nova Consulting Grp. v. Eng'g Consulting Servs., Ltd.*, 290 Fed. Appx. 727, 733 (5th Cir. 2008) (quoting *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003)); *see also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("It is the role of the adversarial system, not the court, to highlight weak evidence."). Accordingly, "[a]n expert's opinions are not inadmissible simply because an underlying assumption may be contestable." *Koenig v. Beekmans*, 2017 WL 6033404, at *4 (W.D. Tex. Dec. 5, 2017) (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 615 (8th Cir. 2011)).

The court is not persuaded that Compton's reliance on either of the assumptions described above renders his opinions inadmissible. "[T]he factual basis of an expert[']s opinion goes to the credibility of testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion on cross-examination." *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 2007 WL 9747239, at *24 (S.D. Tex. Jan. 23, 2007) (citation omitted); *see also Canrig Drilling Tech. Ltd. v. Trinidad Drilling L.P.*, 2016 WL 7188657,

at *8 (S.D. Tex. Dec. 12, 2016) (noting that expert witnesses are "entitled to assume underlying facts" and it is the party's "obligation to present evidence at trial to prove those underlying assumptions, subject to [the opposing party's] cross-examination," and an objection to these assumptions "may affect the weight to which those opinions are entitled" but does not "provide a basis for excluding [the expert's] opinions"); *Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 WL 5495590, at *4 (W.D. Tex. Oct. 21, 2004) ("Courts should not [be] lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility. 'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" (citation omitted)). Accordingly, through contrary evidence and cross-examination at trial, defendants can challenge any perceived deficiencies in Compton's opinions that defendants maintain are the result of allegedly improper assumptions. *See Pipitone*, 288 F.3d at 250 ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (quoting *Daubert*, 509 U.S. at 596 )). The court declines to exclude any portion of Compton's opinions on the ground that they are allegedly premised on improper assumptions.

V

Defendants next contend that Compton's opinions consisting of legal conclusions are inadmissible because they usurp the role of the court.

A

To recover on its TUFTA claim, Maiden must prove at trial that the transfer of the RBC Assets was made "with actual intent to hinder, delay, or defraud" RBC Sciences' creditors. *See* Tex. Bus. & Com. Code Ann. § 24.005(a)(1). Section 24.005(b) of TUFTA "lists several factors—commonly known as the 'badges of fraud'—that may be considered in determining the presence of actual intent." *Taylor v. Trevino*, 2021 WL 347566, at *3 (N.D. Tex. Feb. 2, 2021) (Fitzwater, J.) (citing *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008)).[3]

---

[3]Section 24.005(b) provides:

> In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Defendants contend that Compton is offering legal conclusions regarding the necessary elements of Maiden's TUFTA claim (i.e., "reasonable value" and "actual intent"); that although expert testimony "can speak to the value of assets or consideration exchanged," Compton's opinion on whether "reasonably equivalent value" was exchanged between RBC Sciences and the DSS Defendants is an impermissible legal conclusion, DSS Br. 18; that Compton also impermissibly concludes that three of the "badges of fraud" under TUFTA are present in this case but that it is up to Maiden, not Compton, to prove the presence of "badges of fraud"; and that Compton's opinions and testimony regarding "reasonably equivalent value" and "badges of fraud" should be excluded because they are impermissible legal conclusions.

Maiden responds that "reasonably equivalent value" and the existence of "badges of fraud" are questions of fact, not legal principles, and that Compton is not offering an opinion on the ultimate issue of fraudulent intent.

B

Although under Rule 704(a) an expert may give opinion testimony that embraces an ultimate issue, an expert witness is not allowed to opine on legal conclusions that should be drawn from the evidence, because this "both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) ("Experts cannot 'render conclusions of law' or provide opinions on legal issues." (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009))).

The court concludes, for largely the reasons Maiden presents in its response, that Compton is not impermissibly offering opinion testimony on legal issues. Compton opines in his report that "the transfer of the RBC Assets to the DSS Entities was for less than reasonably equivalent value." D. App. 3. Although this opinion tracks the language of TUFTA itself, it is not a conclusion with respect to a *legal* issue. Rather, "[t]he question of reasonable equivalence is 'largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts.'" *In re TransTexas Gas Corp.*, 597 F.3d 298, 306 (5th Cir. 2010) (quoting *In re Dunham*, 110 F.3d 286, 289 (5th Cir. 1997)). Nor are Compton's opinions regarding the existence of several "badges of fraud" opinions on legal issues. "Badges of fraud" are simply "factors" that the trier of fact can consider when deciding whether the defendant acted with actual intent. Tex. Bus. & Com. Code Ann. § 24.005(b). Compton offers no opinion on the ultimate issue in this case, i.e., whether defendants acted with actual intent. Accordingly, the court also denies this ground of defendants' motions.

VI

Defendants also move to exclude, as untimely, the annotated versions of Compton's original and supplemental expert reports, as well as Compton's work papers, which they maintain contain new opinions. Maiden responds that Compton's work papers were prepared with his report and provided to the DSS Defendants as a courtesy; that because Compton's work papers are not evidence, and Compton will not offer them at trial, there is nothing for the court to strike; that "[t]he DSS Defendants cite no authority to prevent Compton from possessing annotated versions of reports for his own reference," P. Br. 20; and that Compton

- 13 -

should be permitted to testify to the opinions in his principal report and supplemental report, which no party disputes were properly disclosed.

Maiden represents that Compton's work papers "are not evidence, and Compton will not offer them at trial." P. Br. 20. And there is no suggestion that Maiden intends to offer at trial the annotated versions of Compton's expert and supplemental reports. Accordingly, there is no basis to strike the annotated versions of Compton's original and supplemental expert reports and his work papers, and defendants' motion to strike is denied.

\* \* \*

Accordingly, for the reasons explained, the court denies RBC Sciences' and the DSS Defendants' motions to exclude any expert testimony of Compton, and it denies Maiden's motion to strike the reply appendixes filed by RBC Sciences and the DSS Defendants.

**SO ORDERED**.

November 16, 2022.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE