IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MAIDEN BIOSCIENCES, INC.,                §
                                         §
                    Plaintiff,           §
                                         §
VS.                                      §      Civil Action No. 3:21-CV-0327-D
                                         §
DOCUMENT SECURITY SYSTEMS,               §
INC., et al.,                            §
                                         §
                    Defendants.          §

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

Now that you have heard all of the evidence and the argument of counsel, it becomes my duty to give you the instructions of the court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in these instructions, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case, you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. The parties and the public expect that you will carefully and impartially consider

29  all of the evidence in the case, follow the law as stated in these instructions, and reach a just verdict
30  regardless of the consequences.

31       This case should be considered and decided by you as an action between persons of equal
32  standing in the community and holding the same or similar stations in life. The law is no respecter
33  of persons, and all persons, including corporations, stand equal before the law and are to be dealt
34  with as equals in a court of justice.

35       As stated earlier, it is your duty to determine the facts, and in so doing you must consider
36  only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony
37  of the witnesses, including deposition witnesses, the exhibits admitted in the record, and the
38  stipulated facts.

39       A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys
40  may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that
41  fact as having been proved here in court.

42       The term "evidence" does not include anything that I have instructed you to disregard.

43       Evidence admitted before you for a limited purpose may not be considered for any purpose
44  other than the limited purpose for which it was admitted.

45       Remember that any statements, objections, or arguments made by the lawyers are not
46  evidence in the case. The function of the lawyers is to point out those things that are most
47  significant or most helpful to their side of the case and, in so doing, to call your attention to certain
48  facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your
49  own recollection and interpretation of the evidence that controls in the case. What the lawyers say

50  is not binding upon you. If an attorney's question contained an assertion of fact that the witness did

51  not adopt, the assertion is not evidence of that fact.

52      You are not bound by any opinion that you might think I have concerning the facts of this

53  case, and if I have in any way said or done anything that leads you to believe that I have any opinion

54  about the facts in this case, you are instructed to disregard it. Further, nothing in these instructions

55  to you is made for the purpose of suggesting or conveying to you an intimation as to what verdict

56  I think you should find.

57      Although you should consider only the evidence in the case, you are permitted to draw such

58  reasonable inferences from the testimony and exhibits as you feel are justified in the light of

59  common experience. In other words, you may make deductions and reach conclusions that reason

60  and common sense lead you to draw from the facts established by the evidence in the case.

61      You should not be concerned about whether the evidence is direct or circumstantial. "Direct

62  evidence" exists when the evidence directly establishes the facts that a party asserts to be true, such

63  as by an eyewitness or in a document. "Circumstantial evidence" is proof of a chain of facts and

64  circumstances that, without going directly to prove the existence of an essential fact, gives rise to

65  a logical inference that such fact does actually exist. The law makes no distinction between the

66  weight you may give to either direct or circumstantial evidence.

67      Now, I have said that you must consider all of the evidence. This does not mean, however,

68  that you must accept all of the evidence as true or accurate.

69      You are the sole judges of the "credibility" or believability of each witness and the weight

70  to be given to the witness' testimony. In weighing the testimony of a witness, you should consider

71  the witness' relationship to a particular party; the witness' interest, if any, in the outcome of the

- 3 -

72  case; the witness' manner of testifying; the witness' opportunity to observe or acquire knowledge

73  concerning the facts about which the witness testified; the witness' candor, fairness, and

74  intelligence; and the extent to which the witness' testimony has been supported or contradicted by

75  other credible evidence. You may, in short, accept or reject the testimony of any witness, in whole

76  or in part.

77         Also, the weight of the evidence is not necessarily determined by the number of witnesses

78  testifying as to the existence or nonexistence of any fact. You may find that the testimony of a

79  smaller number of witnesses as to any fact is more credible than the testimony of a larger number

80  of witnesses to the contrary.

81         A witness may be "impeached" or discredited by contradictory evidence, by a showing that

82  the witness testified falsely concerning a material matter, or by evidence that at some other time the

83  witness said or did something, or failed to say or do something, that is inconsistent with the witness'

84  present testimony. If you believe that any witness has been so impeached, it is your exclusive

85  province to give the testimony of that witness such credibility or weight, if any, as you think it

86  deserves.

87         You should keep in mind, of course, that a simple mistake by a witness does not necessarily

88  mean that the witness was not telling the truth as the witness remembers it, because people naturally

89  tend to forget some things or remember other things inaccurately. So, if a witness has made a

90  misstatement, you need to consider whether that misstatement was simply an innocent lapse of

91  memory or an intentional falsehood, and that may depend on whether it has to do with an important

92  fact or with only an unimportant detail.

93       Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Before this trial, attorneys representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility, and weighed and otherwise considered by you insofar as possible, in the same way as if the witness had been present and had testified from the witness stand in court.

       Deposition testimony can be introduced for the purpose of impeaching or discrediting a witness. If, in the deposition, the witness made any statements in conflict with testimony the witness gave in court, you may consider such conflicts and any explanation therefor in determining the witness' credibility.

       Certain exhibits were used during trial for demonstrative purposes, which means they were not admitted in evidence and will not be provided to you during your deliberations. You may consider demonstrative exhibits to the extent they help you understand the evidence admitted during the trial, but you are entitled to disregard them entirely if you find that they do not accurately reflect the evidence that they purport to demonstrate.

       The rules of evidence provide that if scientific, technical, or other specialized knowledge will assist the jury to understand the evidence or to determine a fact in issue, a witness qualified by knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts in the case.

115        You should consider each opinion received in evidence in this case and give it such weight

116    as you may think it deserves.  If you should decide that the opinion is not based upon sufficient

117    knowledge, skill, experience, training, or education, or if you should conclude that the reasons given

118    in support of the opinion are not sound, or that the opinion is not based upon sufficient facts or data,

119    or that the opinion is outweighed by other evidence, or that the opinion is not the product of reliable

120    principles and methods, or that the witness has not applied the principles and methods reliably to

121    the facts in the case, then you may disregard the opinion entirely.

122        There are two burdens—or standards—of proof that apply in this case.  The applicable

123    burden of proof is mentioned at various places in this charge and is identified in the instruction that

124    precedes each question that you are asked to answer.

125        The first burden is called proof by a "preponderance of the evidence."  A preponderance of

126    the evidence means such evidence as, when considered and compared with that opposed to it, has

127    more convincing force and produces in your minds a belief that what is sought to be proved is more

128    likely true than not true.  To prove a claim or defense by a "preponderance of the evidence" merely

129    means to prove that the claim or defense is more likely so than not so.

130        The second burden is called proof by "clear and convincing evidence."  "Clear and

131    convincing evidence" means the measure or degree of proof that produces a firm belief or conviction

132    of the truth of the allegations sought to be established.  The clear and convincing evidence standard

133    is a heavier burden than the preponderance of the evidence standard.

134        In determining whether any fact in issue has been proved by the applicable burden of proof,

135    the jury may consider the testimony of all the witnesses, including deposition witnesses, regardless

- 6 -

136 of who may have called them, and all the exhibits received in evidence, regardless of who may have

137 produced them.

138       In this case more than one claim and defense is involved.  Therefore, you must consider each

139 claim and defense, and the evidence pertaining to it, separately, as you would had each claim and

140 defense been tried before you separately.

141       If the proof fails to establish any essential element of a claim or defense by the applicable

142 burden of proof, the jury must find against the party with the burden of proof on that claim or

143 defense.

144       As used in this charge, the following terms have these meanings:

145       The term "Maiden" means plaintiff Maiden Biosciences, Inc.

146       The term "DSS" means defendant DSS, Inc.

147       The term "Decentralized" means defendant Decentralized Sharing Systems, Inc.

148       The term "HWH" means defendant HWH World, Inc., formerly known as Bliss

149 International, Inc.

150       The term "RBC Sciences" means defendant RBC Life Sciences, Inc.

151       The term "RBC International" means defendant RBC Life International, Inc.

152       The term "RBC USA" means defendant RBC Life Sciences USA, Inc.

153       The term "DSS Defendants" means, collectively, defendants DSS, Decentralized, HWH, and

154 RBC International.

155       A "claim" means a right to payment or property, whether or not the right is reduced to

156 judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

157 legal, equitable, secured, or unsecured.

158        A "creditor" means a person who has a claim.

159        A "debt" means a liability on a claim.

160        A "debtor" means a person who is liable on a claim.

161        A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets

162 at a fair valuation.  A debtor who is generally not paying the debtor's debts as they become due is

163 presumed to be insolvent.

164        Assets under this instruction do not include property that has been transferred, concealed,

165 or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner

166 making the transfer voidable under these instructions.

167        A "person" can be an individual, corporation, organization, or any other legal or commercial

168 entity.

169        "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or

170 involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment

171 of money, release, lease, and creation of a lien or other encumbrance.

172        An "insider" includes a director or officer of a debtor, person in control of the debtor, and

173 affiliate of the debtor.

174        An "affiliate" includes a person or any other legal entity whose business is operated by the

175 debtor under a lease or other agreement, or a person substantially all of whose assets are controlled

176 by the debtor.

<sup>177</sup>                                               MAIDEN'S FRAUDULENT TRANSFER CLAIMS

178        Maiden brings actual and constructive fraudulent transfer claims against the defendants.  The

179 defendants deny that Maiden is entitled to recover on these claims.

180 QUESTION NO. 1:

181        Did RBC Sciences or RBC USA transfer any of the assets or incur any of the obligations

182 listed below with actual intent to hinder, delay, or defraud any creditor?

183        In determining actual intent, you may consider, among other factors, whether—

184        1.      The transfer or obligation was to an insider.

185        2.      RBC Sciences or RBC USA retained possession or control of the property transferred

186 after the transfer.

187        3.      The transfer or obligation was concealed.

188        4.      Before the transfer was made or the obligation was incurred, RBC Sciences or RBC

189 USA had been sued or threatened with suit.

190        5.      The transfer was of substantially all of RBC Sciences' or RBC USA's assets.

191        6.      RBC Sciences or RBC USA absconded.

192        7.      RBC Sciences or RBC USA removed or concealed assets.

193        8.      The value of the consideration received by RBC Sciences or RBC USA was

194 reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

195        9.      RBC Sciences or RBC USA was insolvent or became insolvent shortly after the

196 transfer was made or the obligation was incurred.

197        10.      The transfer occurred shortly before or shortly after a substantial debt was incurred.

198       11.    RBC Sciences or RBC USA transferred the essential assets of the business to a lienor

199  who transferred the assets to an insider of RBC Sciences or RBC USA.

200       "Reasonably equivalent value" includes, without limitation, a transfer or obligation that is

201  within the range of values for which the transferor would have sold the assets in an arm's length

202  transaction.

203       Instruction:  Maiden has the burden of proof by a preponderance of
204       the evidence.  If Maiden has met its burden of proof, answer "Yes";
205       otherwise, answer "No."  Answer "Yes" or "No" for each asset or
206       obligation listed below.

207       1.    All or substantially all assets of RBC Sciences.

208       ANSWER:  ___Yes___

209       2.    All or substantially all assets of RBC USA.

210       ANSWER:  ___Yes___

211

212  QUESTION NO. 2:

213       Did RBC Sciences or RBC USA transfer any of the assets or incur any of the obligations

214  listed below without receiving reasonably equivalent value?

215       Value is given for a transfer or an obligation if, in exchange for the transfer or obligation,

216  property is transferred or an antecedent debt is secured or satisfied, but value does not include an

217  unperformed promise made otherwise than in the ordinary course of the promisor's business to

218  furnish support to the debtor or another person.

219       "Reasonably equivalent value" includes, without limitation, a transfer or obligation that is

220  within the range of values for which the transferor would have sold the assets in an arm's length

221  transaction.

222        For this question only, a person gives a reasonably equivalent value if the person acquires

223    an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale

224    or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon

225    default under a mortgage, deed of trust, or security agreement.

226                Instruction:  Maiden has the burden of proof by a preponderance of
227                the evidence.  If Maiden has met its burden of proof, answer "Yes";
228                otherwise, answer "No."  Answer "Yes" or "No" for each asset or
229                obligation listed below.

230            1. All or substantially all assets of RBC Sciences.

231            ANSWER: _____Yes_____

232            2. All or substantially all assets of RBC USA.

233            ANSWER: _____Yes_____

234

235        If you answered "Yes" as to an asset or obligation in Question No. 2, answer Question No.

236    3 as to the asset or obligation.  Otherwise, do not answer Question No. 3.

237    <u>QUESTION NO. 3</u>:

238        At the time the asset was transferred or the obligation was incurred—

239        1.  Was RBC Sciences or RBC USA engaged in or about to engage in a business or a

240    transaction for which its remaining assets were unreasonably small in relation to the business or

241    transaction; or

242        2. Did RBC Sciences or RBC USA intend to incur or believe that it would incur, or should

243    it reasonably have believed that it would incur, debts beyond its ability to pay as they became due;

244    or

245    3. Was RBC Sciences or RBC USA insolvent or did it become insolvent as a result of the

246    transfer or obligation?

247    Instruction:  Maiden has the burden of proof by a preponderance of
248    the evidence.  If Maiden has met its burden of proof, answer "Yes";
249    otherwise, answer "No."  Answer "Yes" or "No" for each asset or
250    obligation listed below for which you answered "Yes" in response to
251    Question No. 2.

252    1. All or substantially all assets of RBC Sciences.

253    ANSWER: ___Yes___

254    2. All or substantially all assets of RBC USA.

255    ANSWER: ___Yes___

256    QUESTION NO. 4 is intentionally omitted.

257

258    If you answered "Yes" to an asset or obligation in Question No. 1 or 3, answer Question No.

259    5. Otherwise, do not answer Question No. 5.

260    QUESTION NO. 5:

261    Is RBC USA responsible for the conduct of RBC Sciences?

262    Instruction:  Maiden has the burden of proof by a preponderance of
263    the evidence.  If Maiden has met its burden of proof, answer "Yes";
264    otherwise, answer "No."

265    ANSWER: ___Yes___

266    RBC USA is "responsible" for the conduct of RBC Sciences if RBC USA was organized and

267    operated as a mere tool or business conduit of RBC Sciences; there was such unity between RBC

268    USA and RBC Sciences that the separateness of RBC USA had ceased; and holding only RBC

269    Sciences responsible would result in injustice.

270    In deciding whether there was such unity between RBC USA and RBC Sciences that the

271    separateness of RBC USA had ceased, you are to consider the total dealings of RBC USA and RBC

272    Sciences, including—

273    1.  the degree to which RBC USA's property had been kept separate from that of RBC

274    Sciences;

275    2.  the amount of financial interest, ownership, and control RBC Sciences maintained over

276    RBC USA; and

277    3.  whether RBC USA had been used for personal purposes of RBC Sciences.

278    If you answered "Yes" to an asset or obligation in Question No. 1 or 3, answer Question No.

279    6.  Otherwise, do not answer Question No. 6.

280    QUESTION NO. 6:

281    What is the amount necessary to satisfy Maiden's claim?

282    Instruction:  Maiden has the burden of proof by a preponderance of
283    the evidence.  Answer in dollars and cents, if any.

284    ANSWER:  $4,244,659.50
        + court interest

285        If you answered "Yes" to an asset or obligation in Question No. 1 or 3, answer Question No.

286     7. Otherwise, do not answer Question No. 7.

287    QUESTION NO. 7:

288        What was the value of the assets transferred at the time of the transfer?

289        You should subtract the value of a debt secured by a "valid lien" from the value of the assets.

290    A "valid lien" means a lien that is perfected by filing an appropriate financing statement. However,

291    a lien is not a "valid lien" if it is fraudulently created or is part of a larger fraudulent scheme.

292        Instruction:  Maiden has the burden of proof by a preponderance of
293        the evidence.  Answer in dollars and cents, if any.

294        ANSWER: ___$5,000,000___

295        If you answered "Yes" to an asset or obligation in Question No. 1 or 3, answer Question No.

296     8. Otherwise, do not answer Question No. 8.

297    QUESTION NO. 8:

298        Instruction:  Maiden has the burden of proof by a preponderance of
299        the evidence.  If Maiden has met its burden of proof, answer "Yes";
300        otherwise, answer "No."

301    Were these parties transferees of RBC Sciences' assets?

302        1.    DSS        ANSWER: ___no___

303        2.    Decentralized    ANSWER: ___no___

304        3.    HWH        ANSWER: ___yes___

305        4.    RBC International    ANSWER: ___no___

306        Were these parties transferees of RBC USA's assets?

307        5.    DSS                 ANSWER: _____ No _____

308        6.    Decentralized        ANSWER: _____ Yes _____

309        7.    HWH              ANSWER: _____ No _____

310        8.    RBC International     ANSWER: _____ No _____

311        Were these parties persons for whose benefit a transfer was made?

312        9.    DSS                 ANSWER: _____ Yes _____

313        10.    Decentralized        ANSWER: _____ Yes _____

314        11.    HWH              ANSWER: _____ Yes _____

315        12.    RBC International     ANSWER: _____ No _____

316        Answer Question No. 9 only if you answered Question No. 1 "Yes" in at least one space or

317 answered Question No. 8 "Yes" as to at least one defendant.

318 <u>QUESTION NO. 9</u>:

319        Do you find by clear and convincing evidence that the harm to Maiden resulted from malice

320 or fraud of the defendant in question?

321        "Clear and convincing evidence" means the measure or degree of proof that produces a firm

322 belief or conviction of the truth of the allegations sought to be established.

323        "Malice" means a specific intent by the defendant in question to cause substantial injury or

324 harm to Maiden.

- 15 -

325   "Fraud" means any fraud found by you as to the defendant in question when answering

326   Question No. 1.

327   <u>Instruction</u>:  Maiden has the burden of proof by clear and convincing
328   evidence.  If Maiden has met its burden of proof, answer "Yes";
329   otherwise, answer "No."  Answer only as to a defendant as to whom
330   you answered "Yes" in response to Question No. 1 or No. 8.

331   1.   DSS                    ANSWER:  ___Yes___

332   2.   Decentralized          ANSWER:  ___Yes___

333   3.   HWH                    ANSWER:  ___Yes___

334   4.   RBC International       ANSWER:  ___No___

335   5.   RBC Sciences           ANSWER:  ___Yes___

336   6.   RBC USA                ANSWER:  ___Yes___

337   Answer Question No. 10 only if you answered Question No. 9 "Yes" as to at least one

338   defendant.  Otherwise, do not answer Question No. 10.

339   <u>QUESTION NO. 10</u>:

340   What sum of money, if any, if paid now in cash, should be assessed against a defendant listed

341   below and awarded to Maiden as exemplary damages, if any, for the conduct found in response to

342   Question No. 9?

343   "Exemplary damages" means an amount that you may in your discretion award as a penalty

344   or by way of punishment.

- 16 -

345      Factors to consider in awarding exemplary damages, if any, are—

346      1.     The nature of the wrong.

347      2.     The character of the conduct involved.

348      3.     The degree of culpability of the defendant in question.

349      4.     The situation and sensibilities of the parties concerned.

350      5.     The extent to which such conduct offends a public sense of justice and
351             propriety.

352      6.     The net worth of the defendant in question.

353      Instruction:  Maiden has the burden of proof by a preponderance of
354      the evidence.  Answer in dollars and cents, if any.  Answer only as to
355      a defendant as to whom you answered "Yes" in response to Question
356      No. 9.

357      1.     DSS                    ANSWER: $5,000,000

358      2.     Decentralized          ANSWER: $2,500,000

359      3.     HWH                    ANSWER: $2,500,000

360      4.     RBC International       ANSWER: $0

361      5.     RBC Sciences           ANSWER: $0

362      6.     RBC USA                ANSWER: $0

363    <center>DEFENDANTS' DEFENSES</center>

364    Defendants deny that Maiden can meet its burden of proving that it is entitled to recover on

365    its fraudulent transfer claims. Defendants also rely on defenses to these claims, for which they have

366    the burden of proof. Maiden denies that defendants can prove their defenses.

367    If you answered Question No. 1 "Yes" in at least one space, and you answered Question No.

368    8 "Yes" as to at least one defendant, answer Question No. 11 as to a defendant as to whom you

369    answered "Yes" in response to Question No. 8. Otherwise, do not answer Question No. 11.

370    <u>QUESTION NO. 11</u>:

371    Did the defendant in question take any of the assets listed below in good faith and for a

372    reasonably equivalent value?

373    A party takes an asset in good faith if the party (1) had no actual notice of the fraudulent

374    intent of the debtor and (2) lacked knowledge of such facts as would cause a person of ordinary

375    prudence to question whether the debtor had fraudulent intent.

376    "Reasonably equivalent value" means an amount that at the time of the transfer was within

377    the range of values for which such transfers would occur in an arm's-length transaction.

378    <u>Instruction</u>: The defendant in question has the burden of proof by a
379    preponderance of the evidence. If it has met its burden of proof,
380    answer "Yes"; otherwise, answer "No."

381    ANSWER:

| 382 | Defendant | RBC Sciences Property | RBC USA Property |
|---|---|---|---|
| 383 | HWH | No | No |
| 384 | DSS | No | No |
| 385 | RBC International | No | No |
| 386 | Decentralized | No | No |

387    If you answered Question No. 1, 3, or 8 "Yes" in at least one space, and you answered

388    Question No. 8 "Yes" as to at least one defendant, answer Question No. 12 as to a defendant as to

389    whom you answered "Yes" in response to Question No. 8.  Otherwise, do not answer Question No.

390    12.


391    QUESTION NO. 12:

392    Did the defendant in question take any of the assets listed below in good faith?

393    A party takes an asset in good faith if the party (1) had no actual notice of the fraudulent

394    intent of the debtor and (2) lacked knowledge of such facts as would cause a person of ordinary

395    prudence to question whether the debtor had fraudulent intent.

396    Instruction:  The defendant in question has the burden of proof by a
397    preponderance of the evidence.  If it has met its burden of proof,
398    answer "Yes"; otherwise, answer "No."

- 19 -

399       ANSWER:

| 400 Defendant | RBC Sciences Property | RBC USA Property |
|---|---|---|
| 401 HWH | No | No |
| 402 DSS | No | No |
| 403 RBC International | No | No |
| 404 Decentralized | No | No |

405       If you answered Question No. 1 "Yes" in at least one space, answer Question No. 13.

406 Otherwise, do not answer Question No. 13.

407 QUESTION NO. 13:

408       Did RBC Sciences give any of the assets listed below to one or more of the DSS Defendants

409 in good faith?

410       For purposes of answering this question, you are instructed as follows.

411       A party gives an asset in good faith if it is given to another party pursuant to a valid lien or

412 pursuant to a foreclosure on a valid lien.

413       A "valid lien" means a lien that is effective against the holder of a judicial lien subsequently

414 obtained by legal or equitable process or proceedings.

415       A lien that is fraudulently created—that is, that is conferred as part of a fraudulent

416 scheme—is not a valid lien.  Also, even a lien that is not itself fraudulent is not a valid lien if it is

417 part of a larger fraudulent scheme.

418       A party also gives property in good faith to another party if it was pursuant to a regularly

419   conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or

420   disposition of the interest of the giving party upon default under a security agreement.

421       For purposes of a foreclosure sale, collusion means collusion in the actual conduct of the

422   sale.

423                **Instruction**:   RBC Sciences has the burden of proof by a
424                preponderance of the evidence. If it has met its burden of proof,
425                answer "Yes"; otherwise, answer "No."
426   ANSWER:

| To Defendant | RBC Sciences Property | RBC USA Stock |
|---|---|---|
| HWH | No | No |
| DSS | No | No |
| RBC International | No | No |
| Decentralized | No | No |

433       If you answered Question No. 3 "Yes" in at least one space, answer Question No. 14.

434   Otherwise, do not answer Question No. 14.

435   <u>QUESTION NO. 14</u>:

436       Did HWH enforce its security interest in the RBC Sciences Property in compliance with

437   Chapter 9 of the Texas Business and Commerce Code?

438       For purposes of answering this question, you are instructed as follows.

439       After a debtor defaults, a secured party may sell or otherwise dispose of any or all of the

440   collateral property.

- 21 -

441        To comply with Chapter 9 of the Texas Business and Commerce Code, a secured party must

442 provide reasonable notice of the sale and conduct the sale in a commercially reasonable manner.

443        Reasonable notice must be provided to (1) the debtor, (2) any party which sent a notification

444 of a claim of interest in the collateral property to the secured party before the notification date, and

445 (3) any other secured party or lienholder that filed a financing statement identifying the collateral

446 property at least 10 days before the notification date.

447        Notice sent 10 days or more before the foreclosure sale is sent within a reasonable time.

448        Notice is proper if it (1) describes the debtor and secured party, (2) describes the collateral

449 property, (3) states the intended method of sale, (4) states that the debtor is entitled to an accounting,

450 and (5) states the time and place of a public sale.

451        A foreclosure sale is made in a commercially reasonable manner if it conforms with

452 reasonable commercial practices among dealers in the type of property that was the subject of the

453 sale.

454        The fact that a greater amount could have been obtained by a sale at a different time or in a

455 different method is not alone sufficient to show the foreclosure sale was not commercially

456 reasonable.

457        Instruction: HWH has the burden of proof by a preponderance of the
458        evidence. If it has met its burden of proof, answer "Yes"; otherwise,
459        answer "No."

460        ANSWER: _No_


461        If you answered Question No. 3 "Yes" in at least one space, answer Question No. 14A.

462 Otherwise, do not answer Question No. 14A.

- 22 -

QUESTION NO. 14A:

Was Decentralized's security interest in the RBC USA Property enforced in compliance with Chapter 9 of the Texas Business and Commerce Code?

After a debtor defaults, a secured party may propose to accept the collateral property in partial satisfaction of the debt. With respect to the October 2019 Note, RBC USA was a debtor as to Decentralized, and Decentralized was a secured party.

For an acceptance of collateral to comply with Chapter 9 of the Texas Business and Commerce Code, (1) a secured party must send a proposal to accept collateral to the debtor, (2) the secured party must send notice of its proposal to accept collateral to the proper parties, (3) the debtor must agree to the terms of the acceptance in a record authenticated after default, and (4) the secured party does not receive an objection to the proposal within 20 days after notification was sent to that party.

Notice of the proposal to accept collateral must be provided to (1) any party which sent a notification of a claim of interest in the collateral property to the secured party before the debtor agrees to the terms of the acceptance, (2) any other secured party or lienholder that filed a financing statement identifying the collateral property at least 10 days before the debtor agrees to the terms of the acceptance, and (3) any secondary obligor.

An "obligor" is a person that, with respect to an obligation secured by a security interest in the collateral, (i) owes payment or other performance of the obligation, (ii) has provided property other than the collateral to secure payment or other performance of the obligation, or (iii) is otherwise accountable in whole or in part for payment or other performance of the obligation.

A "secondary obligor" is an obligor to the extent that (a) the obligor's obligation is secondary; or (b) the obligor has a right of recourse with respect to an obligation secured by collateral against the debtor, another obligor, or property of either.

> Instruction:   Decentralized has the burden of proof by a preponderance of the evidence.  If it has met its burden of proof, answer "Yes"; otherwise, answer "No."

ANSWER: ____No____

If you answered Question No. 1 or 3 "Yes" in at least one space, answer Question No. 15. Otherwise, do not answer Question No. 15.

QUESTION NO. 15:

Is Maiden estopped from complaining about the transfer of the RBC Sciences Property?

A party will be estopped in order to prevent it from asserting, to another's disadvantage, a right inconsistent with a position previously taken by it.  Estoppel applies where it would be unconscionable to allow that party to maintain its present position, which is inconsistent with its previous position.

> Instruction: Defendants have the burden of proof by a preponderance of the evidence.  If they have met their burden of proof, answer "Yes"; otherwise, answer "No."

ANSWER: ____No____

<sup>503</sup> <u>Jury Deliberations</u>

<sup>504</sup> The fact that I have given you in this charge instructions about a particular claim or defense,

<sup>505</sup> or that I have not so instructed you, should not be interpreted in any way as an indication that I

<sup>506</sup> believe a particular party should, or should not, win this case.

<sup>507</sup> In order to return a verdict your verdict must be unanimous.  It is your duty as jurors to

<sup>508</sup> consult one another and to deliberate with a view towards reaching an agreement.  Each of you must

<sup>509</sup> decide the case for yourself, but only after an impartial consideration with each other of all the

<sup>510</sup> evidence in the case.  In the course of your deliberations, do not hesitate to reexamine your own

<sup>511</sup> view and change your opinion if convinced it is erroneous.  Do not, however, surrender your honest

<sup>512</sup> conviction as to the weight or effect of the evidence solely because of the opinion of other jurors or

<sup>513</sup> for the mere purpose of returning a verdict.  Remember at all times that you are not partisans.  You

<sup>514</sup> are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

<sup>515</sup> After I finish reading this charge, you will retire to the jury room.  I will send you the

<sup>516</sup> exhibits that have been admitted into evidence.  You will first select one member of the jury to act

<sup>517</sup> as presiding juror.  The presiding juror will preside over your deliberations and will speak on your

<sup>518</sup> behalf here in court.

<sup>519</sup> Do not deliberate unless all members of the jury are present in the jury room.  In other words,

<sup>520</sup> if one or more of you go to lunch together or are together outside the jury room, do not discuss the

<sup>521</sup> case.

<sup>522</sup> When you have reached unanimous agreement as to your verdict, the presiding juror shall

<sup>523</sup> fill in your answers to the questions on a copy of the charge that I will provide to you for this

<sup>524</sup> purpose, shall date and sign the last page of that copy of the charge, and shall notify the court

- 25 -

525 security officer that you have reached a verdict.  The court security officer will then deliver the
526 verdict to me.

527 The court will honor the schedule you set for your deliberations and your requests for breaks
528 during your deliberations.  From time to time I may communicate with you concerning your
529 schedule.  This is done primarily for the purpose of anticipating the court's staffing needs, and is not
530 in any way intended to suggest that your deliberations should be conducted at a different pace or on
531 a different schedule.

532 During the trial, the court reporter made a verbatim record of the proceedings.  The court
533 rules do not provide for testimony to be produced for the jury in written form, or for testimony to
534 be read back to the jury as a general aid in refreshing the jurors' memories.  In limited
535 circumstances, the court may direct the court reporter to read testimony back to the jury in open
536 court.  This is done, however, only when the jury certifies that it disagrees as to the testimony of a
537 particular witness, and identifies the specific testimony in dispute.

538 If, during your deliberations, you desire to communicate with me, your presiding juror will
539 reduce your message or question to writing, sign it, and pass the note to the court security officer,
540 who will bring it to my attention.  I will then respond as promptly as possible, either in writing or
541 by asking you to return to the courtroom so that I can address you orally.  If you do send a message
542 or ask a question in which you indicate that you are divided, never state or specify your numerical
543 division at the time.

544 December 19, 2022.
545
546
547 SIDNEY A. FITZWATER
548 SENIOR JUDGE

- 26 -

549     The foregoing is the unanimous verdict of the jury.

550     Dated:  12/20/22

551     _____

        Presiding Juror